UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARNULFO SOZA,

    Petitioner,

v.

ANTHONY P. KANE, warden,

    Respondent.

No. C 05-2152 MHP (pr)

**ORDER DENYING HABEAS PETITION**

## INTRODUCTION

Arnulfo Soza, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Arnulfo Soza was convicted in Ventura County Superior Court of second degree murder and was found to have used a firearm. He was sentenced to 17 years to life in state prison in 1982. Soza's habeas petition does not concern that conviction directly, but instead focuses on a July 26, 2004 decision by a panel of the Board of Prison Terms (now known as the Board of Parole Hearings ("BPH")) finding him not suitable for parole.

The BPH identified several factors in support of its determination that Soza was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released. The factors identified included the circumstances of the crime, his criminal and social history, and his insufficient participation in beneficial self-help

1  programming.  The specifics regarding the crime and the circumstances supporting the
2  finding of unsuitability are described in the Discussion section later in this order.
3       Soza sought relief in the California courts.  The Ventura County Superior Court
4  denied his petition for writ of habeas corpus in 2004 in a reasoned order.  Resp. Exh. 6.  The
5  California Court of Appeal summarily denied his petition for writ of habeas corpus and the
6  California Supreme Court summarily denied his petition for review.  Resp. Exhs. 7 and 8.
7       Soza then filed his federal petition for writ of habeas corpus.  The court construed the
8  federal petition for writ of habeas corpus to allege a due process violation based on the
9  alleged absence of some evidence to support the BPH's decision and a due process violation
10 due to a biased decision-maker.  Respondent filed an answer and petitioner filed a traverse.
11 The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

13      This court has subject matter jurisdiction over this habeas action for relief under 28
14 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because Soza was
15 incarcerated and the challenged action occurred at a prison in Soledad in Monterey County,
16 which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

18      Prisoners in state custody who wish to challenge collaterally in federal habeas
19 proceedings either the fact or length of their confinement are required first to exhaust state
20 judicial remedies, either on direct appeal or through collateral proceedings, by presenting the
21 highest state court available with a fair opportunity to rule on the merits of each and every
22 claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not
23 dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

25      This court may entertain a petition for writ of habeas corpus "in behalf of a person in
26 custody pursuant to the judgment of a State court only on the ground that he is in custody in
27 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).
28 The petition may not be granted with respect to any claim that was adjudicated on the merits

in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

The Ventura County Superior Court's decision is the last reasoned decision, and therefore is the decision to which § 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

**DISCUSSION**

A.   Biased Decision-Maker Claim

Soza included in his petition a couple of paragraphs arguing that the BPH is a biased decision-maker. See Petition, p. 10-11. The claim fails for a lack of evidentiary support, as Soza has presented no evidence to support his allegations. He also waived any claim that the particular panel that sat at his parole consideration hearing in 2004 was biased, as he was given an opportunity to object to the makeup of the panel and chose not to object. See RT 6-7. The court now turns to his claim that the decision reached by the panel was not supported by sufficient evidence.

B.   The Sufficiency Of The Evidence Claim

    1.   Due Process Requires That Some Evidence Support A Parole Denial

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Superintendent v. Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457). The some evidence standard of Superintendent v. Hill is clearly established law in the parole context for purposes of § 2254(d). Sass, 461 F.3d at 1129.

A critical issue in parole denial cases concerns the BPH's use of evidence about the crime that led to the conviction. Three Ninth Circuit cases provide the guideposts for applying the Superintendent v. Hill some evidence standard on this point: Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), Sass, 461 F.3d 1123, and Irons v. Carey, 479 F.3d 658 (9th Cir. 2007). Biggs explained that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17. Biggs upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916. Next came Sass, which criticized the Biggs statements as improper and beyond the scope of the dispute before the court: "Under AEDPA it is not

4

1  our function to speculate about how future parole hearings could proceed." <u>Sass</u>, 461 F.3d at
2  1129.  <u>Sass</u> determined that the parole board is not precluded from relying on unchanging
3  factors such as the circumstances of the commitment offense or the parole applicant's pre-
4  offense behavior in determining parole suitability.  <u>See</u> <u>id.</u> at 1129 (commitment offenses in
5  combination with prior offenses provided some evidence to support denial of parole at
6  subsequent parole consideration hearing).  Recently, <u>Irons</u> determined that due process was
7  not violated by the use of the commitment offense and pre-offense criminality to deny parole
8  for a prisoner 16 years into his 17-to-life sentence.  <u>Irons</u> emphasized that all three cases
9  (<u>Irons</u>, <u>Sass</u> and <u>Biggs</u>) in which the court had "held that a parole board's decision to deem a
10 prisoner unsuitable for parole solely on the basis of his commitment offense comports with
11 due process, the decision was made before the inmate had served the minimum number of
12 years required by his sentence."  <u>Irons</u>, 479 F.3d at 665; <u>see e.g.</u>, <u>id.</u> at 660 (inmate in 16th
13 actual year of his 17-to-life sentence).

14         The message of these three cases is that the BPH can look at immutable events, such
15 as the nature of the conviction offense and pre-conviction criminality, to predict that the
16 prisoner is not currently suitable for parole even after the initial denial (<u>Sass</u>), but the weight
17 to be attributed to those immutable events should decrease over time as a predictor of future
18 dangerousness as the years pass and the prisoner demonstrates favorable behavior (<u>Biggs</u> and
19 <u>Irons</u>).  <u>Sass</u> did not dispute the principle that, other things being equal, a criminal act
20 committed 50 years ago is less probative of a prisoner's current dangerousness than one
21 committed 10 years ago.  Not only does the passage of time in prison count for something,
22 exemplary behavior and rehabilitation in prison count for something according to <u>Biggs</u> and
23 <u>Irons</u>.  <u>Superintendent v. Hill</u>'s standard might be quite low, but it does require that the
24 decision <u>not</u> be arbitrary, and reliance on only the facts of the crime might eventually make
25 for an arbitrary decision.

26         Having determined that there is a due process right, and that some evidence is the
27 evidentiary standard for judicial review, the next step is to look to state law because that sets
28 the criteria to which the some evidence standard applies.  One must look to state law to

5

1  answer the question, "'some evidence' of what?"

2        2.      <u>State Law Standards For Parole For Murderers In California</u>

3        California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years.  A first degree murder conviction yields a base term of 25 years to life and a second degree murder conviction yields a base term of 15 years to life imprisonment.  See <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1078 (Cal.), <u>cert. denied</u>, 126 S. Ct. 92 (2005); Cal. Penal Code § 190.  The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is substantial.

      A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a).  Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

      One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

6

1 an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. §
2 2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal.
3 Code Regs. § 2402(b).

4 The regulations contain a matrix of suggested base terms for several categories of
5 crimes. See 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix
6 of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years,
7 depending on some of the facts of the crime. Some prisoners estimate their time to serve
8 based only on the matrix. However, going straight to the matrix to calculate the sentence
9 puts the cart before the horse because it ignores critical language in the relevant statute and
10 regulations that requires the prisoner first to be found suitable for parole.

11 The statutory scheme places individual suitability for parole above a prisoner's
12 expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg,
13 34 Cal. 4th at 1070-71. Under state law, the matrix is not reached unless and until the
14 prisoner is found suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he
15 panel shall set a base term for each life prisoner who is found suitable for parole"). The
16 California Supreme Court's determination of state law in Dannenberg is binding in this
17 federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

18 The California Supreme Court also has determined that the facts of the crime can
19 alone support a sentence longer than the statutory minimum even if everything else about the
20 prisoner is laudable. "While the Board must point to factors beyond the minimum elements
21 of the crime for which the inmate was committed, it need engage in no further comparative
22 analysis before concluding that the particular facts of the offense make it unsafe, at that time,
23 to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re
24 Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he
25 nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole"
26 but might violate due process "where no circumstances of the offense reasonably could be
27 considered more aggravated or violent than the minimum necessary to sustain a conviction
28 for that offense").

7

3.     Some Evidence Supports The BPH's Decision In Soza's Case

The BPH found Soza unsuitable for parole based on the circumstances of the murder, his prior criminality and social history, and his insufficient programming in prison.

a.     Commitment Offense

The killing was described in the life prisoner evaluation report:

> On September 19, 1982, at 6:25 p.m., Oxnard Police responded to a call regarding a victim of a gunshot wound. Upon arriving at Conchita Bar located at 129 Seventh Street, Oxnard, California they found 23 year old Galdino Negrete laying on the floor bleeding from a head wound. The victim was transported to Saint Johns Hospital where he was pronounced dead at 6:40 p.m. The cause of death was determined to be two (2) small caliber gunshot wounds to the head. The third gunshot wound entered the victim's shoulder and exited through soft tissue. [The third gunshot] did not appear to be a life-threatening wound. Investigations revealed that Soza went to Conchita, ordered a beer and sat down with the victim Negrete. Due to an earlier incident between them a brief argument occurred. Soza pulled out a small handgun and shot Negrete three times and ran out the door. He was apprehended running down the street.

Resp. Exh. 4, p. 1.

Soza's version, as recounted in the same report, was that he had several encounters with the victim, apparently pertaining to the victim's belief that Soza was drinking and talking with the victim's wife. Id. He further stated that, on the day of the killing, he had left the bar earlier when the victim entered; he went to another bar and met a waitress, who he gave a ride back to her workplace, the Conchita Bar. In the life prisoner evaluation report version, Soza said that when he entered the bar, the victim was at one end of the bar, drunkenly walked toward him and started an argument. Soza stated that the victim's mannerism gave him the impression that the victim was going to harm him. "Soza states that he felt threatened when the victim reached behind his back and he felt the victim was going to pull out a weapon. Soza stated on impulse he pulled out the gun and shot him." Resp. Exh. 4, p. 2. The author of the report wrote:

> It should be noted that the prisoner has given several versions of the crime. In his first statement to the police, and as documented in his board report dated 6/6/87, Soza claimed, "the victim grabbed an empty beer bottle and hit him over the head with it." In his 1992 board report, Soza stated he had previously been threatened by the victim "with a knife and that he had shot the victim out of fear of being stabbed." During this interview process, Soza states the victim never physically attacked him.

Resp. Exh. 4, p. 2. His story also had changed in that he currently stated he earlier left

8

1  Conchita's to avoid a confrontation with the victim, but previously had denied knowing that
2  the victim was at the bar when he was there earlier that day.  See Resp. Exh. 3, p. 10.

3       A circumstance tending to indicate unsuitability for parole is that "the prisoner
4  committed the offense in an especially heinous, atrocious or cruel manner."  15 Cal. Code
5  Regs. § 2402(c)(1).  The factors to be considered in determining whether that circumstance
6  exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate
7  and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled
8  or mutilated during or after the offense," "[t]he offense was carried out in a manner which
9  demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for
10 the crime is inexplicable or very trivial in relation to the offense."  15 Cal. Code Regs. §
11 2402(c)(1).

12      The BPH relied on the commitment offense to deny parole, finding that it was "carried
13 out in a very calculated manner."  RT 37.  Soza left the bar after the first encounter, but later
14 returned with a gun and shot the victim three times at very close range.  RT 38.  The motive
15 of fighting over a woman was trivial.  RT 38.  The BPH identified more than the minimum
16 elements of second degree murder as it indicated that Soza returned with a gun after an
17 earlier encounter with the man and shot him three times at very close range.  Cf. Dannenberg,
18 34 Cal. 4th at 1071; In re Rosenkrantz, 29 Cal. 4th at 682-83.  The autopsy indicated that the
19 first two shots had been to the victim's face and there was stippling on one of those wounds
20 that indicated closeness of range.  See Resp. Exh. 3, p. 4.  Although the circumstances of the
21 murder might not alone provide sufficient evidence to deny parole 22 years into Soza's
22 sentence, the BPH relied on several other factors in addition to the circumstances of the
23 murder.  The murder could be considered in conjunction with other circumstances as tending
24 to show unsuitability for parole.  See 15 Cal. Code Regs. § 2402(b) ("Circumstances which
25 taken alone may not firmly establish unsuitability for parole may contribute to a pattern
26 which results in a finding of unsuitability.")

9

b.      Prior Criminality and Social History

The BPH is directed by the regulation to consider all relevant and reliable information in determining suitability for parole, including the prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented." 15 Cal. Code Regs. § 2402(b). Among the specific circumstances listed as tending to indicate unsuitability is a previous record of violence, such as if the prisoner had "on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." 15 Cal. Code Regs. § 2402(c)(2).

Soza had a limited criminal history before the commitment offense. He had been arrested in 1981 for possession of a switchblade and was fined. He was arrested in 1981 for speeding and failure to appear and was fined. He had entered the country illegally in 1977. And he was carrying a firearm on the day of the murder. Although the BPH considered a circumstance proper under California law, Soza's prior criminality was rather limited and would not alone support the denial of parole. It could, however, be considered as part of the overall picture of him that the BPH properly considered in determining whether he was suitable for parole. See 15 Cal. Code Regs. § 2402(b)

c.      Institutional Performance

Section 2402(b) allows the BPH to consider a great range of relevant and reliable information, such as the prisoner's social history and mental state.

Soza's institutional behavior had been good. He had received no CDC-115 serious rule violation reports in his 22 years in prison. He had, however, received five CDC-128s, which are counselling chronos for lesser rules transgressions. His most recent CDC-128 was in 2000 for contraband. The BPH's concern was not with what Soza was doing, but rather with what he wasn't doing in prison.

The BPH relied on the fact that Soza had not sufficiently participated in beneficial self-help programs in determining that he was not suitable for parole. RT 38. The BPH's determination that Soza had a history of alcohol abuse and alcohol was involved in the murder was supported by the record. Before his incarceration, he drank every weekend but

1  not always enough to get drunk. RT 17.  At the time of the murder, he was not falling down
2  drunk, but was just "so-so" drunk.  RT 17.  Soza had participated in AA occasionally in
3  prison, and had only recently re-joined it.  RT 24-25.  Soza knew little about the AA
4  program.  See RT 25.  He also had not participated in any of the anger management kinds of
5  programs.  RT 25.  Despite his lengthy incarceration, Soza's self-help and programming
6  apparently was limited to watching a 3-hour video called "Re-Engaging Into Society" and his
7  occasional participation in AA.  See RT 24-26.

8       The BPH also was concerned that, despite earlier recommendations that he do so,
9  Soza had not obtained his GED, was not working toward it and apparently didn't intend to
10 pursue it.  See RT 22-23.  Soza apparently had just a grade-school education in Mexico.
11 See RT 4-5.  He had, however, received thousands of hours of vocational education
12 programming in things like upholstery and dry cleaning.  See RT 21-22.  He also stated that
13 he needed to work to send money home to his family in Mexico, but it had been at least
14 seven months since he had done so.  See RT 23.

15      The BPH's concern about the limited programming had some evidentiary support.
16 Section 2402(b) allows the BPH to consider "any other information which bears on the
17 prisoner's suitability for release." As with the other circumstances, Soza's institutional
18 under-performance alone could not support the denial of parole but could be considered as
19 one part of the overall picture that showed Soza was not suitable for parole. See 15 Cal. Code
20 Regs. § 2402(b).

21           d.      <u>There Was Enough Evidence To Support The Decision</u>

22     It is a close call whether there was sufficient evidence to support the Board's decision
23 to find Soza unsuitable for parole.  His crime occurred more than two decades ago, and his
24 pre-incarceration criminal offenses were not violent offenses.  However, his crime was
25 committed in a bar and when he was drunk, thus making his limited participation in AA (or
26 any other self-help group) and the absence of anger management type courses in the two
27 decades of his incarceration a matter of serious concern to parole authorities, as was his
28 choosing not to upgrade educationally beyond his grade school education.  This is a case

11

where the individual circumstances standing alone would not support a parole denial, but their combined effect is enough to provide the necessary support for the BPH's conclusion that the prisoner was not suitable for parole. The AEDPA's added layer of deference to the state court's analysis also compels the conclusion that the writ cannot be granted here.

The Orange County Superior Court correctly identified the "some evidence" standard as the standard for judicial review of BPH decisions and reasonably applied it to consider the evidentiary support for the BPH's conclusion that Soza was not suitable for parole. See Resp. Exh. 6.

> In my review of the Board of Prison Terms' hearing in the case at bar, I do find that there was "some evidence" sufficient to justify the denial of petitioner's request for parole and that petitioner's writ is, therefore, denied. [¶] In denying the petitioner's request for the setting of a date for parole, the Board of Prison Terms found that petitioner has an unstable social history, has entered this country illegally, has been convicted of carrying a switchblade knife and was carrying a firearm on the date of the offense in question. The board also found that the crime was very callous and that the petitioner committed the offense in a very cruel manner. The board also noted that at prior parole hearings, the board had suggested that petitioner participate in several self-help programs such as Anger Management, Alternatives to Violence and Conflict Resolution, just to name a few. The record indicated that the petitioner's participation in self-help programs has been limited and he has not upgraded himself educationally. Based on the above, the board concluded that the petitioner was not ready for parole and was still a danger to society. [¶] I agree with the board's assessment.

Resp. Exh. 6, p. 1. The Orange County Superior Court's rejection of Soza's insufficient evidence claim was not contrary to or an unreasonable application of the Superintendent v. Hill some evidence standard. He is not entitled to the writ.

## CONCLUSION

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: May 31, 2007

Marilyn Hall Patel
United States District Judge

12

# NOTES

1.  The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).